UNITED STATES *v.* BUCK'S, INC. (No. 5005)[1]

United States Court of Customs and Patent Appeals,
November 10, 1959

[1] C.A.D. 721.

*George Cochran Doub*, Assistant Attorney General, and *Richard E. Fitz-Gibbon*, Chief, Customs Section, for the United States.

*Allerton deC. Tompkins* for appellant.

[Oral argument October 9, 1959, by Mr. FitzGibbon and Mr. Tompkins]

Before WORLEY, Chief Judge, and RICH, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

RICH, Judge, delivered the opinion of the court:

█ This appeal by the Government is from the judgment of the United States Customs Court, First Division, Abstract 62870, sustaining the importer's protest and holding the imported merchandise, window niches, classifiable as parts of altars, and free of duty under paragraph 1774, Tariff Act of 1930, rather than as manufactures of wood, not specially provided for, under paragraph 412 as claimed by the Government.

The only issue before us is whether the merchandise falls within the following language of paragraph 1774, as amended by the Act of June 12, 1952, 66 Stat. 137:

Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing * * * imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes.

It is stipulated that there was compliance with the religious use provision, leaving only the question of whether the merchandise is parts of altars.

The imported window niches are carved wooden structures, the top halves serving as window frames with round arched tops, to frame stained glass windows already present in the church, the bottom halves providing the niches proper, having shelves at the bottom and carved wood lattices or canopies at the top so that they will receive and frame vases of flowers or other church accessories. The wood carving is of a design harmonious with that of the altar, the reredos, pulpit and other woodwork of the church. The reredos is against the rear wall behind the altar and incorporates a stained glass window therein, the niches being in the flanking and angularly disposed walls to the right and left of the altar. As parts of the building they are not attached either to the altar or the reredos, except in the sense that things attached to the same building are attached to each other.

This is not the first time this court has been called upon to consider what constitutes altars or parts of altars under paragraph 1774 or its predecessors.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to the provisions of Title 28, United States Code, Section 294(d).

For example, in *Hogue* v. *United States*, 13 Ct. Cust. Appls. 587, T.D. 41437, decided February 25, 1926, under the identical wording, insofar as it is pertinent, of paragraph 1674, Tariff Act of 1922, the predecessor of this court held, in overruling the importer's protest, that a sanctuary lamp, while required to be kept burning before the altar, was not in any physical sense a part of the altar. The lamp and the altar were considered as separate entities, each performing "its proper, ordinary and separate functions."

In *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, T.D. 42840, decided in 1928, the same court was confronted with the importer's contention that a marble sanctuary floor, upon which the altar rests, was a part of an altar. The marble floor was purposely made to, and did in fact, harmonize with the altar and its surroundings in color and in all other respects. In overruling the protest, the court, after considering the term "altar" in its narrow sense of a "raised structure on which sacrifices are offered or incense burned" and in its broader sense as "a house of worship," concluded that Congress must have used the term "altar" in the "restricted and strictly religious sense." The court, in choosing not to extend the meaning of altars or parts of altars, referring to the harmonious design of the altar and its setting, said:

\* \* \* That accord and that harmony serve to complete the entirety known as a sanctuary, but in accomplishing that result one element of the entirety does not become part of another and none of them loses its identity.

In a second *Daprato* case, *Daprato Statuary Co.* v. *United States*, 26 CCPA 173, C.A.D. 13, decided in 1938 under paragraph 1774, Tariff Act of 1930, this court overruled the importer's protest and held that marble slabs, mosaic panels, panels of Venetian mosaics, and an arch, which when assembled were to form a reredos for an altar, could not be considered as parts of altars. In that case the reredos was separated from the mensa, or altar table, by twenty-six inches at its closest point. The court, quoting from the first *Daprato* case, approved the statement that the term "altar" was used by the Congress in a "restricted and strictly religious sense" and further agreed that mere harmony of design could not destroy the separate entities, stating:

\* \* \* Such an arrangement probably makes for convenience, and undoubtedly adds to the beauty of the sanctuary, but surely, because an ecclesiastical architect and the church desire such an arrangement, the reredos does not, for that reason, become an integral, constituent, and component part of the altar in a tariff sense. The most that can be said in favor of the position taken by counsel for appellant is that, in this particular arrangement, the reredos is designed to be used in connection with, but not as an integral part of, the "main altar."

In the decision below in the instant case, the court, being of the opinion that this case was controlled by its own prior decision in *Bernardini Studios* v. *United States*, 39 Cust. Ct. 281, C.D. 1942, decided December 11, 1957, sustained the protest.

With this result we cannot agree. It is our opinion that the imported window niches are not parts of an altar, as provided for in paragraph 1774. ■ The location of the niches in the wall of the sanctuary does not make them parts of an altar merely because one may conveniently call the wall behind an altar a reredos, or because one may say the sanctuary is harmoniously designed. The merchandise is simply a window niche, made of wood, and used as a part of the church interior, notwithstanding it may be part of the setting for the altar. As such, it would not be expected to be out of harmony, architecturally, with its surroundings. Any niche, window, or window niche located in the church would normally be expected to be in a design harmonious with the rest of the church, but a window niche is not transformed into a part of an altar by virtue of its proximity thereto or because the architect successfully carried out an attempt to procure unity of design in the sanctuary, producing from the altar, reredos, and window niches an aesthetically pleasing whole. The photographs which are in evidence, taken after the installation in the church of the imported window niches, and showing the entire front section of the St. John's Episcopal Church in Wichita, Kansas, show all of the visible woodwork to have been designed according to a uniform style not at all unusual in American church architecture.

The lower court described the factual situation thus:

It was also established that the niches were designed as an extension of the main altar table, so as to enlarge the same; that they, in fact, are a part of the reredos of the altar; and that the altar table and reredos, including the subject niches, form a single unit in harmonious design constituting the altar of the church.

The mental picture this description engenders must be augmented by pointing out that the niches "extended" the altar table only in the sense that a serving table extends a dining table; that they are a "part" of the reredos only in the sense that they are mounted in adjacent building walls and are designed in the same style; and that the "single unit" involves not unity of structure but only unity of design. In the 1938 *Daprato* case this court held that a reredos was not a part of an altar in the tariff sense, so even were it the fact that the niches were part of a reredos, it would not necessarily follow that they are parts of the altar. What we have here is merely that "accord and harmony" in the accouterments of a sanctuary which have in the past been found insufficient to make sanctuary floors, sanctuary lamps and a reredos

"parts" of altars under paragraph 1774 or its predecessor paragraphs.

While it may seem to the benefactors of religious institutions to be a hard judgment to hold that importations intended for presentations to churches should be charged with import duties, the courts must carry out the will of Congress, which has seen fit to enumerate as duty free only a small fraction of the many possible furnishings of churches. See *St. Alban's Episcopal Church* v. *United States*, 22 CCPA 366, T.D. 47387, at page 374.

As we hold the imported window niches not to be parts of altars, the judgment of the Customs Court sustaining the protest is *reversed*.

*George Cochran Doub*, Assistant Attorney General, and *Richard E. FitzGibbon*, Chief, Customs Section for the United States.
*Stein and Shostak* (*Marjorie M. Shostak* of counsel), for appellee.